Milton Berkowitz et al., Administrators (Estate of Jennie Berkowitz) *v.* Alice H. Berkowitz et al.

Baldwin, C. J., King, Murphy, Shea and Alcorn, Js.

Argued May 10—decided June 25, 1963

*Morgan P. Ames,* for the appellant (plaintiff Feitelberg).

*Harold J. Eisenberg,* for the appellees (defendants).

ALCORN, J. This is the second time that a phase of this family controversy has come before us for review. The litigation began in December, 1956, following the death of Jennie Berkowitz, mother of the contending parties, in April of that year. The complaint as originally framed sought to set aside conveyances of real estate allegedly procured by undue influence exerted on the deceased. It also prayed for an accounting of the income from the real estate and for other relief. Later, a second count was added, demanding an accounting by the named defendant, hereinafter referred to as the defendant, for moneys received by the defendant as a result of her exercise of a power of attorney executed by Jennie Berkowitz and a judgment for the amount found to be due on the accounting. The issues concerning the real estate conveyances were tried and determined in the Superior Court, and on appeal to this court the judgment was sustained. *Berkowitz* v. *Berkowitz,* 147 Conn. 474, 162 A.2d 709. The basic family situation is described in the opinion in that case. It was stipulated at the time of that trial that the claims for an accounting and

judgment under the second count were not then put in issue and that, if the parties were unable to agree upon them, they would be subsequently determined by the court. The parties were unable to agree and, in August, 1958, stipulated for a reference of the issues under the second count to the Honorable Ernest A. Inglis as a committee, and the reference was ordered. The parties agreed that the order should be given the effect of a judgment directing an accounting and appointing former Chief Justice Inglis to take the account.

At the hearing before the committee, the parties agreed that the expenditures in dispute totaled $18,858.81, that $8992.55 of this amount was paid to the defendant personally, that $9746.26 was paid to Jennie's brother, Jacob Wilensky, that $100 was paid to Jennie's son Morris Berkowitz, and that $20 was paid to Jennie's daughter Muriel Alpert. The committee found that the defendant, Jennie's daughter, and her uncle Jacob lived with Jennie in her home and that, for many years, Jacob had assisted Jennie in her financial and business affairs, and in return she had paid him various amounts annually. In addition to rendering services, it had been Jacob's practice to purchase and pay for a part of the food and household supplies. This procedure continued from December 15, 1954, until March 2, 1956, while the defendant held a power of attorney to sign checks for her mother. During that period, the defendant paid to Jacob from Jennie's funds $3855 for services rendered to Jennie, $5591.26 as reimbursement for household expenditures and $100 to repay a loan made by him to Jennie. The committee found that all of these payments were made with Jennie's knowledge and assent and that they were proper.

The committee further found that the defendant made three payments to herself from Jennie's funds during the same period. One of them was in the amount of $2500 and was a gift at the express direction of her mother. The second was a payment of $1800, made at her mother's direction, to reimburse the defendant for loaning $1000 to her sister Rose Feitelberg and partially to equalize, to the extent of $800, the gift to Rose which the loan payment by the mother represented. The third payment was a gift from Jennie to the defendant of the $4692.55 balance remaining in Jennie's checking account at the termination of the agency under the power of attorney, made with the proviso that the defendant was to use as much as might be necessary for her mother's future bills and the family support. The committee further found that following the receipt of this third payment, the defendant actually spent $8420.96 for attorney's and accountant's fees, taxes, funeral and burial expenses and other items for her mother or her mother's estate, or, in other words, $3728.41 more than the amount involved in the gift of the bank account. The committee found that the payments of $100 to Morris and $20 to Muriel were gifts made at the direction of their mother. He further found that all of the payments made by the defendant from her mother's bank account were proper, and consequently he allowed all items of the account.

Upon the filing of the committee's report, the plaintiffs moved to correct it, claiming, inter alia, that the amount paid Jacob was $9146.26 instead of $9746.26, as previously agreed to by them and as found by the committee. The committee refused to correct the total amount found to have been paid to Jacob. The committee, however, corrected the

arithmetical error of $200 in the total of the individual payments to Jacob recited in the report and amended the report to find that $300 rather than $100 was paid to Jacob in repayment of a loan made by him to Jennie.

Following the filing of this correction in the report, the parties, by a written stipulation, agreed that certain minor mathematical errors, at least one of which had been induced by the parties, had been made in the report. They then proceeded to agree that Jacob's loan to his sister had actually been $300 as recited in the corrected report and that the total amount paid to Jacob was $9646.26 rather than the $9746.26 originally agreed to or the $9146.26 claimed in the plaintiffs' motion to correct. They further agreed that the amount paid him for services was $3800 in 1955 and $555 in 1956 and that the amount paid to reimburse him for expenditures was $4991.26, or $600 less than the amount found by the committee. In other words, although the committee found Jacob's total compensation for services between December 15, 1954, and March 2, 1956, to be $3855, the parties agreed on a total of $4355, which they allocated between the calendar years 1955 and 1956. The stipulation also recited that the parties were at issue as to whether $500 of the total which they agreed had been paid Jacob could properly be allowed in the accounting. The plaintiffs claimed that the $3800 agreed to have been paid him in 1955 exceeded a stipulated remuneration of $3300 for that year as declared in Jennie's income tax return, while the defendant claimed the amount was properly paid him as compensation earned during 1954. The parties also agreed that the defendant had expended on behalf of Jennie and her estate the sum found by the com-

mittee, namely, $8420.96, and agreed that this sum should be allowed the defendant in the accounting. They agreed further that they were at issue over the payments which she had made to herself in the amounts of $2500 and $1800. Finally, they agreed that, depending on how these issues were decided, the defendant would owe the plaintiffs $1071.59 or $571.59 or nothing.

This agreement between the parties relating to the items in the report having been made, the report came before the court for acceptance. The court concluded that the parties were, in effect, requesting it to decide whether the disputed $500 of the payments made to Jacob should be allowed, and it determined that that question should be decided by the committee. The court noted that the parties had agreed on the expenditure of $8420.96 by the defendant in behalf of Jennie and her estate and that the committee had found that the payment of $2500, which the defendant had made to herself, was a gift from Jennie. It noted further that, although the circumstances surrounding the payment by the defendant of $1800 to herself had been partially set forth, the report left uncertain whether this transaction was a gift and that this ultimate fact should be determined by the committee. The court concluded that because the agreement of the parties materially affected items in the report, the case should be returned to the committee for further hearing and report, and an order was entered accordingly.

The case having thus been recommitted, the committee held a further hearing and properly limited his inquiry to (1) the payments claimed to have been made to Jacob as set forth in the original report as amended; (2) whether the payments to the

defendant were voluntary gifts from her mother; and (3) the consideration of any necessary changes in the report required by the determination of the first two issues. Following a hearing, the committee filed a supplementary report expressly based on the evidence introduced at the hearings before him and expressly excluding the agreement of the parties which followed his prior report. He found that Jacob had been paid a total of $9646.26, including $4355 paid to him for services rendered, of which $500 was for services rendered in 1954 and the balance was for services rendered in 1955 and 1956. The committee further found that all of the payments made by the defendant to herself were gifts directed by her mother when the latter was of a sound mind and free of all undue influence. The supplementary report thus determined the issues which the court's order of recommittal had specified and independently determined the total of the payments to Jacob at the figure on which the parties were most recently in agreement.

The committee's original report which had found a total of $9746.26 paid to Jacob had balanced. The supplementary report, which found a total of $9646.26 paid to Jacob, failed to balance by a differential of $100. All other items in the original and supplementary reports remained identical. It is obvious that the $100 differential arises because of the change in the total found to have been paid to Jacob. The committee noted that this $100 is more than offset by the amount which the defendant paid from her own funds for the benefit of Jennie and her estate. This statement is not open to denial since the parties had agreed that the defendant was entitled to be credited with an expenditure of $8420.96 as against the $4692.55 which

was in the bank account given to her by her mother to use for family bills and support.

Following the filing of the supplementary report, the plaintiffs moved that the committee correct both it and the original report and that the committee make a finding of the subordinate facts and set forth his rulings. The motion covers twenty-three pages of the printed record. The committee considered the motion item by item, found subordinate facts principally relating to Jennie's physical condition and treatment preceding her death, found that she died of heart failure at the age of eighty-three, set forth two rulings on evidence and refused to make the remaining corrections sought. Upon the filing of the committee's decision on the motion with the court, the plaintiffs excepted to the report and to its acceptance, the defendant moved for judgment on the report, and the court overruled the exceptions, denied the corrections sought, found the issues under the second count for the defendant and rendered judgment accordingly. It is from this judgment that the present appeal is taken.

The issues sought to be raised on the appeal lurk in the excess verbiage indulged in by the appellant, the plaintiff Rose Feitelberg, administratrix. She sums up her ten assignments of error—a single one of which attacks the committee's ruling on thirty claims of law—by the statement: "Plaintiff claims error, in short, as follows: A. The defendant accountant did not even completely account, in that the account found by the Committee in paragraph 6 of the Supplementary Report does not even balance, and allows defendant an alleged 'offset' which defendant had not even pleaded. B. The defendant accountant did not carry the burden of proof that was hers by producing clear and convincing, competent

evidence of the required nature and degree to justify the donations the defendant fiduciary made to herself as 'gifts' from her mother, or to justify the payments she made to Jacob Wilensky as 'salary' for 'services' that were never rendered and 'reimbursement' in unreasonable amount and without receipts for 'household expenses' that were never proved to have been incurred."

It was the function of the court, in acting on the report and supplemental report, to determine whether the committee had materially erred in his rulings or whether by reason of material corrections in his findings the basis of the report was subverted or whether other sufficient reason existed why the report should not be accepted and, if no such reason for rejecting or recommitting the report existed, to render such judgment as the law required upon the facts in the report. Practice Book § 176. The committee's evidential rulings which are assigned as error merely limited the inquiry at the second hearing to the issues on which the court recommitted the report. The rulings were correct. The record is devoid of any indication that the committee misapplied the rules governing the burden of proof. There is nothing in the record to indicate that such of the thirty propositions of textbook law made before the committee as were applicable were not properly applied. The real issue before the committee was one of credibility. That was an issue for the committee to determine. The evidence appearing in the appendices to the briefs fully supports the committee's findings and justified the court in refusing to correct the report. The appellant's complaint that the account "does not even balance, and allows defendant an alleged 'offset' which defendant had not even pleaded" loses

all force when the lack of balance results from a figure upon which the parties agree and when they further agree that the defendant is entitled to a credit of $3728.41 expended from her own funds. The committee saw and heard the witnesses, weighed their credibility and determined the facts. There was ample evidence to support his report, and the court was correct in accepting it and in rendering judgment on it.

There is no error.

In this opinion the other judges concurred.